IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**JUSTIN FLOYD QUALLS,**<br><br>Defendant. | 24-CR-00213-JFH-1<br><br><u>**OPINION**</u> |

Dated: December 18, 2025

<u>Andrew M. Casey</u>, Hendrick, Casey & Hutter, of Oklahoma City, OK, for defendant Justin Floyd Qualls.

<u>Christopher J. Wilson</u>, U.S. Attorney, and <u>Jessie K. Pippin</u>, Assistant U.S. Attorney, of Muskogee, OK, for plaintiff United States of America.

<u>TIMOTHY M. REIF</u>, Judge, United States Court of International Trade, Sitting by Designation:

Justin Floyd Qualls ("defendant") moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33") "to vacate the finding of guilt as to Count 2 and grant a new trial as to Count 2." Def.'s Rule 33 Mot. for New Trial ("Def. Br."), ECF No. 65; *see also* Def.'s Reply in Supp. of Rule 33 Mot. for New Trial ("Def. Reply Br."), ECF No. 69. Defendant's motion is predicated on three separate grounds: (1) impermissible elicitation of sympathy; (2) leading questioning of the child witness; and (3) limited defense cross-examination and direct examination. *See* Def. Br.

The government opposes the motion. *See* Gov't's Resp. to Def.'s Rule 33 Mot. for New Trial ("Gov't. Br."), ECF No. 68.

For the reasons discussed below, the court denies defendant's motion for a new trial.

## BACKGROUND

On December 11, 2024, defendant was indicted by a federal grand jury in the Eastern District of Oklahoma. Indictment, ECF No. 2. Defendant, an Indian, was charged with two counts of aggravated sexual abuse of a minor in Indian country. *Id.*

On August 5, 2025, a jury trial began as to both counts of the indictment. Min. Sheet, ECF No. 45. On August 7, 2025, the jury found the defendant not guilty on Count 1 and guilty on Count 2. Jury Verdict, ECF No. 55

On August 21, 2025, and September 11, 2025, defendant moved to extend the time period to file his Rule 33 motion. Def.'s Opposed Mot. to Extent Time Period to File a Rule 33 Mot. for New Trial, ECF No. 56; Def.'s Opposed Mot. to Extend Time Period to File a Rule 33 Mot. for New Trial, ECF No. 63. The Court granted both of defendant's motions. *See* Min. Order, ECF No. 57; Min. Order, ECF No. 64.

On September 15, 2025, defendant moved for a new trial pursuant to Rule 33. Def. Br.

## JURISDICTION AND STANDARD OF REVIEW

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

A motion for a new trial should be granted "if, after weighing the evidence and the credibility of the witnesses, the court determines that the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred." *United States v. Garcia*, 182 F.3d 1165, 1170 (10th Cir. 1999) (internal quotation marks and citation omitted). The U.S. Court of Appeals for the Tenth Circuit ("Tenth Circuit") has cautioned that "[a] motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (citation omitted); *United States v. Harjo*, No. CR-21-022-RAW, 2022 WL 1457966, at *2 (E.D. Okla. 2022), *aff'd*, 122 F.4th 1240 (10th Cir. 2024).

Moreover, "[a] motion for a new trial is based on the presumption that the verdict against the defendant is valid," so the defendant has the burden to demonstrate that a new trial ought to be granted. *United States v. Velarde*, 860 F. App'x 132, 137 (10th Cir. 2021) (quoting 3 *Wright & Miller's Federal Practice & Procedure* § 581 (4th ed. 2020)).

New trial motions "are subject to the harmless and plain error provisions of Federal Rule of Criminal Procedure 52" such that "if the substantial rights of the defendant were not affected, the court should refuse to grant the defendant's motion." 3 *Wright & Miller's Federal Practice & Procedure* ("Wright & Miller") § 581 (5th ed.). However, the Tenth Circuit has recognized the cumulative effect doctrine whereby courts aggregate each error found to be harmless to determine

whether the cumulative effect is prejudicial. *See United States v. Barrett*, 496 F.3d 1079, 1121 (10th Cir. 2007).

Finally, when deciding the validity of a new trial motion by a defendant, the court "does not weigh conflicting evidence nor consider the credibility of the witnesses" but "must view the evidence, both direct and circumstantial, in the light most favorable to the prosecution, together with all reasonable inferences that may be drawn therefrom." *United States v. Downen*, 496 F.2d 314, 318 (10th Cir. 1974).

## DISCUSSION

### I. Elicitation of sympathy

The court concludes that defendant fails to establish that the government's questioning and closing remarks elicited sympathy that harmed defendant's substantial rights.

The Tenth Circuit has stated that

> In evaluating claims of prosecutorial misconduct based on improper remarks . . . we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

*Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (second, third and fourth alterations in original) (quoting *Hopkinson v. Shillinger*, 886 F.2d 1185, 1210 (10th Cir. 1989)).

Defendant asserts that "the trial and evidence hinged heavily on the testimony of [the victim,] Z.M., who was eleven years old at the time of her testimony." Def. Br. at 2.  Defendant argues that the government tried to elicit sympathy when it, "at numerous times in closing, referred to Z.M. as feeling 'disgusted,'" and "emphasized that [Z.M.] 'didn't experience a normal childhood summer.'" *Id.* at 2-3 (quoting Tr. of Jury Trial Closing Args. by the Gov't ("Gov't Closing Arg. Tr.") at 3, ECF No. 62).

Defendant cites to three cases for the proposition that the Tenth Circuit "does 'not condone comments encouraging the jury to allow sympathy, sentiment, or prejudice to influence its decision.'" Def. Br. at 2 (quoting *United States v. Martinez*, 6 F. App'x 750, 755 (10th Cir. 2001)) (citing *Moore v. Gibson*, 195 F.3d 1152, 1172 (10th Cir. 1999); *United States v. Lowder*, 5 F.3d 467, 474 (10th Cir. 1993)).  But in each of the three cases, the Tenth Circuit concluded that the challenged comments did *not* impinge upon the defendant's right to a fair trial.

In *Martinez*, the defendant appealed his conviction of aggravated sexual assault of a minor in Indian country. *Martinez*, 6 F. App'x at 752.  The defendant contended that the government's closing statements appealed to the sympathy of the jury when it highlighted the extent of the victim's trauma. *Id.* at 755.  The *Martinez* court rejected the defendant's argument and concluded that "the trauma to [the victim] was hideous no matter who was responsible, and it was likely to produce sympathy" such that "[t]he prosecution's remarks did not add to the jury's sympathy in any significant way." *Id.* at 756.  The court noted also the defense

counsel's instruction to the jury "not to be swayed by sympathy," the prosecution's denial of any intention to "inject sympathy into the deliberations" and the jury instructions, which stated that the verdict had to be based "solely upon the evidence, without prejudice or sympathy." *Id.*

These facts mirror the instant case in which the Court instructed the jury that the verdict was required to be based "solely upon the evidence developed at trial, or the lack of such evidence," that "it would be equally improper . . . to allow any feelings . . . about the nature of the crime charged to interfere with [the] decision-making process" and that the "jury should not be influenced by [an] objection or by the Court's ruling on it." Final Jury Instrs. at 9, 19, ECF No. 51. The jury was sufficiently informed of its mandate and aware of the appropriate body of evidence to consider in its deliberations.

Moreover, given the nature of the crime alleged here, it is probable that there was jury sympathy for the victim long before closing arguments. Such was the case in *Martinez*, where, like here, the crime involved the sexual abuse of a minor. *See Martinez*, 6 F. App'x at 755-756 ("[I]f 'it [is] probable that the nature of the crime produced sympathy for the victim long before the prosecutor gave his closing remarks,' the remarks may not be prejudicial." (second alteration in original) (quoting *Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998)).

In *Gibson*, the Tenth Circuit concluded that the attempts by the government to elicit sympathy were improper but not prejudicial "in light of the overwhelming evidence of guilt and the jury instructions regarding sympathy." *Gibson*, 195 F.3d

at 1172. As in *Martinez* and the instant case, the *Gibson* court determined that the trial court's instructions to the jury to "consider the evidence and testimony received at trial and not to allow sympathy to enter into its deliberations . . . helped to mitigate the effect on the jury of any possible improper prosecutorial statements." *Id.* at 1173 (citation omitted).

One point of distinction is that there was not "overwhelming evidence of guilt" in the instant case. *Id.* at 1172. As defendant notes, "[t]here is no physical evidence" of the acts alleged in this matter. Def. Reply Br. at 3. Instead, the jury considered the testimony of the child victim, members of her family, an expert witness, recordings of defendant's interview with a federal law enforcement official and messages between the victim and defendant. *See* Tr. of Jury Trial Test. of Z.M. ("Z.M. Test."), ECF No. 58; Tr. of Jury Trial Test. of M.M. ("M.M. Test."), ECF No. 59; Tr. of Jury Trial Test. of Brett Collins, ECF No. 60; Tr. of Jury Trial Test. of R.M., ECF No. 61; Min. Sheet, Ex. 1-2, ECF No. 50.

That said, the objectionable comments of the government in *Gibson* were much more extensive than those alleged here. *Compare Gibson*, 195 F.3d at 1172 n.11 ("Can you imagine the terror, the fear that baby girl had when he snatched her. She cried for help there in the parking lot. And those may well have been the last words that ever came out of her mouth."); *id.* ("What must have been going through that little girl's mind when he trussed her up with duct tape everywhere?"); ("She was alone and scared and helpless, and she died in silence with his hands around her neck."), *with* Gov't Closing Arg. Tr. at 3 ("She didn't experience a normal

childhood summer."); *id.* at 7 ("She lost everything. Her family system, as she knew it, and her support system no longer existed."). It stands to reason that "overwhelming evidence of guilt" would be required to surmount the extensive prosecutorial commentary held to be inappropriate in *Gibson*. Neither such extensive prosecutorial commentary nor overwhelming evidence of guilt is present here.

Rather, the attempts by the government to elicit sympathy in the instant case were cured by the defense's timely, sustained objections in closing and the Court's jury instructions thereafter.[1] *See* Final Jury Instrs. at 3 ("It is . . . your duty to base your verdict solely upon the evidence, without prejudice or sympathy."); *id.* at 19 ("It would be . . . improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process."). *Gibson* does not support defendant's arguments.

And in *Lowder*, the government implied that the victims were "left out" of the fraud trial there because, unlike the defendant, the victims did not receive a lawyer. 5 F.3d at 473 ("They don't get anybody to talk for them. They don't get a lawyer. If they're witnesses, they don't even get to watch the trial."). The trial court sustained

---

[1] Defendant continues to object to the government's statement in closing that: "The defendant wants you to look at Z.M., a ten-year-old child, and tell her, 'This is your fault, little girl. You did this.'" Gov't Closing Arg. Tr. at 11. However, the objection to that comment was timely raised and the Court sustained it. *See id.* The same is true of the government's statement that: "Z. told you from that witness stand that before testifying, she told herself that it was going to be okay, and you should tell Z.M. the same thing." *Id.* at 17. As stated, the jury was instructed to ignore comments to which objections were sustained. *See* Final Jury Instrs. at 9.

6:24-cr-00213-JFH    Document 70    Filed in ED/OK on 12/18/25    Page 9 of 13
Court No. 24-CR-00213                                                                              Page 9

the defense counsel's objection and instructed the jury to ignore the reference to unrepresented victims. *Id.* The Tenth Circuit noted that the prosecutor's remarks in its closing statement "were improper" and stated that it did not "condone this type of argument." *Id.* at 473-474. Even so, the remarks did not deprive the defendant of a fair trial "in view of the entire record and the judge's curative instruction." *Id.*

As discussed, the Court in the instant case instructed the jury that the verdict should be based "solely upon the evidence developed at trial, or the lack of such evidence." Final Jury Instrs. at 19. The Court told the jury that it would be "improper for you to allow any feelings you might have about the nature of the crime charged to interfere with your decision-making process." *Id.* And as discussed, the defense made timely objections to many of the government's allegedly improper questions and closing remarks and the Court sustained two of them during closing. *See* Gov't Closing Arg. Tr. at 11:10-17, 13:15-22, 17:6-12; Z.M. Test. at 38-39; M.M. Test. at 13; *see also supra* n.1.

In light of the foregoing, defendant fails to establish support in case law for his elicitation of sympathy ground.

Defendant continues also his objection to the following question that the government asked M.M.: "How did you feel when you found out that the father of your grandchild, grandchild had sexually abused [Victim]?" M.M. Test. at 13.

At the time of the question, defendant's timely objection to the question was overruled. *See id.* The Court's conclusion then was in line with Federal Rule of

Evidence ("FRE") 803(3), which allows for a witness to describe their then-existing mental, emotional or physical condition. Fed. R. Evid. 803(3). The Court properly exercised its discretion there and declines to reverse the ruling here.

In conclusion, the government's purported attempts to elicit sympathy did not result in the denial of defendant's right to a fair trial. Defendant's motion is denied as to this point.

## II.     Leading questioning of the child witness

The court concludes that the alleged leading questioning of Z.M., the child witness, is not an adequate ground for ordering a new trial.

Pursuant to FRE 611(c),

> Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:
>
>     (1) on cross-examination; and
>
>     (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

The Advisory Committee Notes to FRE 611 explain that "[t]he rule continues the traditional view that the suggestive powers of the leading question are as a general proposition undesirable." *Id*. But "[w]ithin this tradition . . . numerous exceptions have achieved recognition: The witness who is hostile, unwilling, or biased; *the child witness* or the adult with communication problems; the witness whose recollection is exhausted; and undisputed preliminary matters." *Id*. (emphasis supplied).

The child-witness exception is well-established in Tenth Circuit jurisprudence, and defendant has failed to articulate a reason that the court should bypass that exception here. *See Antelope v. United States*, 185 F.2d 174, 175 (10th Cir. 1950); *United States v. Tome*, 3 F.3d 342, 352 (10th Cir. 1993), *rev'd on other grounds*, 513 U.S. 150 (1995); *United States v. Durham*, No. CR-14-231-R, 2016 WL 320814, at *7 (W.D. Okla. Jan. 26, 2016), *aff'd*, 902 F.3d 1180 (10th Cir. 2018).

Accordingly, the court rejects defendant's argument that the government's alleged use of leading questions in its direct examination of Z.M. warrants a new trial. Defendant's motion is denied as to this point.

### III. Limitations on the direct examination and cross-examination by the defense

The court concludes that defendant fails to establish that his constitutional rights were violated.

Defendant argues that "[t]he Court disallowed counsel from asking crucial questions about Z.M.'s development. For instance, counsel was limited from asking about Z.M.'s development and if M.M. believed she could understand certain words like 'penis' or 'vagina.'" Def. Br. at 6 (citing M.M. Tr. at 16-17). Defendant objects also to the Court's disallowing counsel "from asking about Defendant's financial status in the family despite the importance it may have as testified by expert Vicki Boan"; defendant's "position of authority in the family"; "Z.M.'s access to electronic tablets"; "questioning of M.M. that went to the second forensic interview"; and "using R.M.'s testimony to contradict testimony of Z.M./M.M. about whether Defendant had any drinking issue." *Id.* at 6-7.

Defendant asserts that counsel's questioning was "squarely" within the scope of proper cross-examination and "the court abused any discretion it had by not allowing the defense to inquire as if it was on direct examination." *Id.* at 7. Defendant prefaces these objections with a recitation of a defendant's "constitutional rights to due process and to confront witnesses against them" under the Fifth and Sixth Amendments. *See id.* at 6.

However, defendant does not describe *how* the Court's restrictions on the defense's questioning resulted in the infringement of defendant's constitutional rights. *See id.* at 5-6.

"A motion for a new trial is based on the presumption that the verdict against the defendant is valid; therefore the burden is on the defendant to demonstrate that a new trial ought to be granted." 3 Wright & Miller § 581; *see Velarde*, 860 F. App'x at 137. Defendant has not met his burden here. The court need not sift through the arguments in defendant's briefing and attempt to connect them to his rights under the Constitution.

Accordingly, defendant's motion is denied as to this point.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion for new trial is **DENIED**.

The Clerk of the Court is respectfully directed to terminate the open motion at ECF No. 65.

Dated: December 18, 2025  /s/ Timothy M. Reif
New York, New York  United States Court of International Trade
*Sitting by Designation*
United States District Court for the
Eastern District of Oklahoma